**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **BARBARA TUCKER,** *Plaintiff,* | § § | |
| **v.** | § § | **PE:25-CV-00049-DC-DF** |
| **SUL ROSS STATE UNIVERSITY,** *Defendant.* | § § § | |

**U.S. MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant Sul Ross State University's Motion to Dismiss Plaintiff's Original Complaint and Motion to Stay Discovery. (Doc. 3). After due consideration, the undersigned **RECOMMENDS** the Motion be **DENIED**.

**NATURE OF THE CASE**

This employment discrimination case arises from claims brought by Plaintiff Barbara Tucker ("Dr. Tucker") against Defendant Sul Ross State University ("the University" or "Sul Ross") for gender and race discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq*. (Doc. 1). The University has moved to dismiss Dr. Tucker's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 3). The Parties have agreed to stay discovery pending resolution of the Motion to Dismiss. (Docs. 3 at 7–8; 5 at 2). This matter has been fully briefed and is ripe for decision. (Docs. 5, 6).

**STATEMENT OF FACTS**

Dr. Tucker is a professor at the University in Alpine, Texas. (Doc. 1 at 2–3). For more than five years, she served as dean of the College of Education and Professional Studies, the University's largest college, enrolling nearly half the student body. *Id*. Her

portfolio encompassed the Departments of Education, Business, Kinesiology, Criminal Justice, and Homeland Security, as well as the Law Enforcement Academy. *Id*. at 4. As a faculty member, department chair, and dean, her performance was rated exemplary—never once marked deficient. *Id.* at 8. She consistently received the highest designation the University's evaluation system allowed, and each evaluation recommended her for meritorious status. *Id*. at 2–3.

In early 2023, at the University's request, Dr. Tucker consolidated Rio Grande College's education program into Sul Ross's Department of Education. (Doc. 1 at 4). This required preserving accreditation while coordinating with the Texas Education Agency on teacher- and professional-certification requirements. *Id.* The seven-month consolidation was completed on time, even as Dr. Tucker continued to oversee her assigned departments. *Id*. That same year the University's president appointed her to coordinate the steering committee developing Sul Ross's first doctoral program in education. *Id*.

By early 2024, Sul Ross employed four academic deans, all women. (Doc. 1 at 3). Two, including Dr. Tucker, earned $119,000 a year; the other two earned slightly more, topping out at $125,000. *Id*. Believing they were underpaid, and their compensation did not match or reflect the scope of their duties, the deans proposed a phased pay increase to $145,000 over three years. *Id*. They supported their proposal with a survey of salaries from peer institutions. *Id*. At one comparable small state school, Angelo State University, the lowest paid academic dean earned $144,999 in 2023–2024. *Id*. The survey showed that Sul Ross paid its deans less than any comparable state institution—and

that even under the proposed plan, they would have remained the lowest paid in Texas. *Id*. The University rejected their proposal. *Id.* at 3–4. Instead, it approved smaller raises and provided no path to parity. *Id*. Dr. Tucker's annual salary for 2024-2025 would increase to $126,467, still the lowest of any dean at Sul Ross. *Id*.

About this time, the Complaint alleges, the University decided to move in a different direction—or so Dr. Tucker came to understand. (Doc. 1 at 4–6). In August 2024, Sul Ross created a new deanship and hired Dr. Sumantra Sengupta, a South Asian male, as dean of the newly formed Rio Grande College of Business at $150,000 a year. *Id* at 4. Before the reorganization, Dr. Tucker had overseen the Department of Business, along with multiple other departments, for less pay. *Id*. Essentially, the University declined to raise its sitting deans to $145,000 over three years but now paid a new dean $150,000 from the start for less work. *Id*. at 4–5.

In November 2024, the University hired Dr. Dean Culpepper, also male, as dean of the newly created College of Health Sciences at $135,000 a year. (Doc. 1 at 5). His college consisted of the Kinesiology Department—formerly part of Dr. Tucker's portfolio—and a small nursing program enrolling only a handful of students. *Id*. Both programs had previously been housed within the broader portfolios led by female deans; after reorganization, they were separated, narrowed, and assigned to a male dean receiving higher pay. *Id*. at 5, 7. By early December 2024, Dr. Tucker's college, though reduced, still encompassed the Departments of Education, Criminal Justice, and Homeland Security, as well as the Law Enforcement Academy. *Id*. at 5.

On December 2, 2024, at a regularly scheduled faculty meeting, Provost Bernardo Cantens informed Dr. Tucker that she was being removed as dean effective immediately and returned to a faculty position. (Doc. 1 at 5–6). No cause was given and no deficiency was identified; the only explanation offered was that the University desired to go in a different direction. *Id* at 6. The University then continued to divide Dr. Tucker's former responsibilities among newly hired male deans at higher salaries. *Id*. While Provost Cantens served as interim dean in 2025, the University hired Dr. Kevin Badgett, also male, at $135,000 a year to oversee the Department of Education alone. *Id*. The remaining departments from Dr. Tucker's portfolio were reassigned to a college led by a female dean, and its programs were likewise redistributed. *Id*.

After reorganization, Dr. Tucker's annual salary was reduced to $80,000 to reflect her diminished authority within the University. (Doc. 1 at 6–7). The University gave no reason for any of its decisions. *Id*. at 8. And although Dr. Tucker had been associated with the University in one capacity or another for more than 15 years, her salary at the end remained comparable to that of a newly tenured professor. *Id*. at 7.

## STANDARDS OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are obligated to dismiss if a party fails to establish subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S. 375, 377 (1994). The party asserting federal jurisdiction, usually the plaintiff, bears the burden of proof. *Stockman v,. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). In resolving a jurisdictional dispute, the court may consider: (1) the complaint alone; (2) the complaint

together with undisputed facts appearing in the record; or (3) the complaint supplemented by undisputed facts, along with the court's resolution of disputed jurisdictional facts. *Ramming v. United States*, 391 F.3d 158, 161 (5th Cir. 2004). Where the Rule 12(b)(1) motion is a facial challenge—that is, based solely on the allegations in the complaint—the court accepts those allegations as true. *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir 2011) *see Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (finding subject-matter jurisdiction subject to either a facial or factual challenge); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (same).

**B. Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint therefore must allege concrete factual matter—who acted, what occurred, when it happened, and how

the conduct violated the law—sufficient to permit a reasonable inference of liability. *Id.*; *see also Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (en banc).

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded facts as true and views them in a light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit.*, 369 F.3d 464, 467 (5th Cir. 2004). But the court need not accept conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678-79). *See Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he Court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'") (quoting *Harmon v. City of Arlington, Tex.,* 16 F.4th 1159, 1162-63 (5th Cir. 2021))). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S.at 570.

## ANALYSIS

### I. The University's Rule 12(b)(1) Challenge is Moot.

First, the University challenges the Complaint's scope, not its merits. (Doc. 3 at 3). In its view, Dr. Tucker has smuggled in claims for breach of contract, procedural irregularities, and arbitrary administrative actions—none of them tethered to race or sex discrimination—and sought punitive damages Title VII does not permit. *Id.* The

University asks the Court to pare the Complaint to its proper bounds or dismiss the excess for lack of jurisdiction under Rule 12(b)(1). *Id.*

Dr. Tucker disavows any claim beyond race and sex discrimination. (Doc. 5 at 2). Where her Complaint touches on the University's contractual obligations and internal procedures, it does so only to contextualize her discrimination allegations—not to assert independent claims against the University. *Id.* at 1–2. She seeks no punitive damages; only the relief Title VII provides. *Id.*

That clarification ends the jurisdictional dispute. (Doc. 6 at 2–3). An issue becomes moot when it no longer presents a live or current controversy in which the court can give meaningful resolution. *McClelland v. Gronwaldt*, 155 F.3d 507, 514 (5th Cir. 1998); *see also J.R. by Analisa R. v. Austin Indep. Sch. Dist.*, 574 F. Supp. 3d 428, 436 (W.D. Tex. 2021) (noting that a claim is moot when no case or controversy exists between the parties (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975))). Because Dr. Tucker affirmatively limits her claims and remedies to those Title VII authorizes, the University's contention that she has exceeded Title VII's scope presents no live or current controversy. The University's Rule 12(b)(1) motion thus offers nothing for the Court to decide, and the Court recommends it be denied as moot.

**II. Dr. Tucker Pleads a Plausible Claim of Discrimination Under Title VII.**

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff establishes a *prima facie* case of discrimination under Title VII by showing four

things: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees outside her protected class. *Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 801 (W.D. Tex. 2022); *see Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

But she need not establish a *prima facie* case at the pleading stage. As the Fifth Circuit has explained, a plaintiff "need not make out a *prima facie* case of discrimination under *McDonnell Douglas*[1] in order to survive a Rule 12(b)(6) motion," and a district court errs by requiring a showing on each *prima facie* prong at the pleading stage. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766-67 (5th Cir. 2019). She must instead plead sufficient facts on the "ultimate elements" of her claim. *Chhim*, 836 F.3d at 470. Two elements matter: (1) an adverse employment action, (2) taken because of her protected status. *Cicalese*, 924 F.3d at 766–67. To carry those elements past dismissal, her complaint need only allege facts sufficient to "nudge [her] claims across the line from conceivable to plausible." *Id.* at 768 (quoting *Twombly*, 550 U.S. at 547).

The University contends that Dr. Tucker has not alleged those ultimate elements. (Docs. 3 at 3–4; 6 at 2–3). It correctly cites *Raj v. La. State Univ.* for the rule that a plaintiff must allege factual matters plausibly linking the adverse action to her protected status. 714 F.3d 322, 331 (5th Cir. 2013). There, the Fifth Circuit observed that "Raj's complaint repeatedly aver[ed] that LSU's actions were 'pretextually' premised on his failure to obtain government funding, but he [did] not allege facts that link the alleged

1. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

harassment with his race or national origin." *Id.* He pleaded an adverse action but nothing tying it to a protected class—the very link the second element demands. His claim fell not because he lacked evidence, but because he lacked allegations. *See Cicalese*, 924 F.3d at 367.

The next relevant case cited by the University follows the same pattern. There, the plaintiff failed to plausibly link the alleged harassment with his race, and the district court dismissed his complaint. *Thomas v. Cook Children's Health Care Sys.*, No. 22-10535, 2023 WL 5972048, at *4 (5th Cir. Sept. 14, 2023) (["Plaintiff's] complaint has failed to plausibly allege facts that demonstrate he was repeatedly subjected to harassment based on his race."). In a third case, the plaintiff failed to identify a similarly situated comparator who was treated more favorably, and his claim was properly dismissed at the Rule 12(b)(6) stage. *Thornton v. Univ. of Tex. Sw. Med. Ctr. Sch. of Med.*, No. 24-10594, 2025 WL 619166, at *3 (5th Cir. Feb. 26, 2025) ("[Plaintiff] fail[ed] to allege a similarly situated non-African American comparator who was treated more favorably . . . ."). These cases align with the Fifth Circuit's holding in *Cicalese*, which asks only that a plaintiff allege facts moving the claim from speculative to plausible. 924 F.3d at 367.

The factual matter alleged by Dr. Tucker sets her case apart from *Raj*, *Thomas* and *Thornton*. She supplies the comparative facts that make discrimination plausible. Three male deans, each identified by name, job title, and salary, assumed responsibility for pieces of her portfolio and were each paid more than she had earned to oversee the whole. Essentially, the University paid men more to manage less, and paid Dr. Tucker less to manage more. *See Hamilton v. Dallas County*, 79 F.4th 494, 502–03 (5th Cir. 2023)

(en banc); *see also Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) ("[A] plaintiff need only allege facts plausibly showing discrimination in the hiring, firing, compensation, or in the '*terms, conditions, or privileges*' of his or her employment." (quoting 42 U.S.C. § 2000e-2(a)(1) (emphasis added))).

Having refused to raise Dr. Tucker's salary, refusing even a phased, multi-year path to partial parity, the University soon found money for others—all men. It hired Dr. Sengupta—a South Asian man, whose racial identity neither Dr. Tucker nor her female colleagues shared—at $150,000. It hired Dr. Culpepper at $135,000 to oversee kinesiology and nursing, and Dr. Badgett at $135,000 to oversee education. Then it removed Dr. Tucker—without cause and without any identified deficiency—from the deanship she had held for five years, and returned her to faculty at $80,000, while her less experienced male counterparts earned more pay for less work. That allegation, taken as true, plausibly supports an inference of discriminatory intent. *Harrison*, 82 F.4th at 430.

The timing tells its own story. Each decision, set beside the next, supports a plausible inference that sex and race played a part in the University's choices. These are not labels or conclusions; they are facts, named and sequenced—and facts of this kind nudge a claim across the line from conceivable to plausible. They are precisely the allegations whose absence doomed the claims in *Raj*, *Thomas*, and *Thornton*. The standard the University invokes here is the standard Dr. Tucker meets.

The University cites additional cases in support of its motion. The Court has considered them and finds them inapposite. Because the University relies on them heavily, a word on why is warranted.

First, the University contends the reduction in Dr. Tucker's salary to $80,000 annually—while her male counterparts earned more—is not a fair comparison, because she failed to allege "the comparator's source of funding, industry-specific salary norms, retention adjustments or other legitimate compensation variables common in higher education." (Doc. 3 at 3–4). For this it cites *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir 2009). *Lee* came on appeal from the denial of summary judgment, after full discovery and addressed whether the plaintiff's comparator evidence raised a genuine dispute of material fact. *Id*. It held that comparators must be similarly situated in "nearly identical" circumstances—a standard the plaintiff there failed to meet on a developed record. *Id*. *Lee* thus speaks to what a plaintiff must prove once the facts are in, not to what she must plead to open the courthouse door. The variables the University would require of Dr. Tucker are matters for discovery, not the complaint.

Second, the University asserts that its restructuring of basically its entire curriculum is not indicative of discriminatory intent and Dr. Tucker's "reassignment to a different position with reduced prestige, without more, does not necessarily constitute actionable discrimination absent a materially adverse change tied to protected class." (Doc. 3 at 4). For this, the University cites *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612–13 (5th Cir. 2007) and *Perez v. Tex. Dept. of Crim. Just., Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004). Both cases arose after full discovery—*Perez* following a jury verdict and

*Alvarado* following denial of summary judgment—and neither evaluated the sufficiency of a pleading. At the Rule 12(b)(6) stage, Dr. Tucker need not produce a perfect comparator; she need only plead facts that plausibly suggest she was treated less favorably than similarly situated male colleagues. She has done so. She alleges that the men hired to replace her as dean held similar responsibilities, performed similar tasks, and yet retained or received compensation and conditions of employment she was denied. *See Harrison*, 82 F.4th at 430. That is sufficient to survive dismissal. The University's need for a fully developed comparator belongs at summary judgment—not here. *See Cicalese*, 924 F.3d at 503.

Third, the University's asserts that Dr. Tucker fails to plausibly allege race discrimination. (Doc. 3 at 5). Dr. Tucker alleges that Dr. Sengupta—a South Asian male—earned $150,000 annually to run the business school, while she and four other female deans were overlooked, not considered, and not afforded any opportunity to apply for the new, higher-paid position. The University's reliance on *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) does not change things. As with the University's other authorities, *Strong* was decided at summary judgment on a fully developed record; it evaluated the sufficiency of evidence, not the sufficiency of a pleading. At this stage, Dr. Tucker is not required to produce proof connecting race to the decision-making process—she is required only to plead facts that make discriminatory treatment plausible.

*Strong* does not control here for a second reason. It holds that temporal proximity, standing alone, will not establish causation. 482 F.3d at 808. But Dr. Tucker

does not rest on timing alone. She alleges that the University denied its female deans a raise over three years, then hired Dr. Sengupta, a South Asian male dean, into a comparable role at a higher salary than those women were paid. Timing is but one thread in a tapestry that also includes pay disparity and a comparator. Those allegations supply the very connection *Strong* found absent.

Fourth, the University contends that its President's remark about skinny dipping—asking whether the female deans intended to go skinny dipping during a school retreat—is a remote and untethered stray remark. (Doc. 3 at 5). For this, it cites *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) and *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). *Russell* followed a jury verdict on a fully tried record; *Texas Instruments* was decided at summary judgment after full discovery. Neither evaluated what a plaintiff must plead to satisfy Rule 12(b)(6)—only what she must prove at later stages. And more fundamentally, Dr. Tucker does not rely on the remark in isolation. She offers it as one strand of a broader pattern of discriminatory treatment—alongside the salary disparity, the diminution of duties, and the differential conditions of employment imposed on her relative to her male counterparts. A remark need not be the sole proof to be probative of it. Woven together with the other allegations, it contributes to a plausible and coherent picture of a workplace in which sex and race were not irrelevant to institutional decision-making.

The University's authorities share a common flaw: each asks this Court to do at the pleadings stage what the Fifth Circuit has reserved for summary judgment. In *Cicalese*, the court held that scrutinizing whether employees are similarly situated or

whether remarks are merely "stray" is analysis "more suited to the summary judgment phase." 924 F.3d at 768. That scrutiny weights the strength of the evidence on a developed record. A motion under Rule 12(b)(6) presents a different question: not whether the plaintiff's evidence will prevail, but whether her allegations, taken as true, state a plausible claim.

## CONCLUSION AND RECOMMENDATION

At the pleadings stage, the court does not measure the weight of the plaintiff's evidence; it measures only the sufficiency of her allegations. The question is not whether Dr. Tucker will ultimately prevail, but whether her Complaint contains enough factual matter, accepted as true, to state a claim that is plausible on its face.

She has made that showing. Her allegations, taken as true, state a plausible claim of sex and race discrimination. At this stage, it is enough that the evidence bend the rod; she need not yet land the fish. The undersigned therefore **RECOMMENDS** the University's Motion to Dismiss be **DENIED**. (Doc. 3).

SIGNED this 30th day of June, 2026.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND RIGHT TO OBJECT

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).